IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RUBINA RIZWAN,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | CAFN: |
| ) | |
| **EMORY HEALTHCARE, INC** ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |
| *Defendant.* ) | |

## COMPLAINT FOR DAMAGES

Plaintiff Rubina Rizwan ("Ms. Rizwan"), files this Complaint against Defendant Emory Healthcare, Inc (EMI), to vindicate her rights and recover all permissible damages under controlling law pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq).

## INTRODUCTION

Ms. Rizwan and her family have been practicing Orthodox Islam for decades and here are some of the unconstitutional conditions that Defendant EMI has made Ms. Rizwan endure, for years because of that: "[W]e are black same skin stick together and we are going to run you out"; knocking on Ms. Rizwan's prayer door to disturb her prayer; locking Ms. Rizwan's prayer door to prevent her from praying; mocking her dialect/accent; making discriminatory

comments about her son; telling her Christianity is better than Islam, and so much more, repeated, non-stop, for over two years.

Ms. Rizwan's direct report supervisor, Tara Matlock, has always responded to these event by (1) telling Ms. Rizwan to "reset" to start over by not discussing previous discriminatory behaviors and comments. Not once has any of the people named as engaging in this unlawful, discriminatory conduct been disciplined. Not once. Consequently, Ms. Rizwan brings this Complaint to vindicate her rights under the U.S. Constitution.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Mr. Charles's claims occurred in this District and Division.

## PARTIES

2.

**Plaintiff Rubina Rizwan** is a Georgia citizen, residing in Georgia.

3.

**Defendant Emory Healthcare, Inc** is a Domestic Nonprofit Corporation, registered to do business in Georgia (control number **K405515**), with a principle

office address of **201 Dowman Drive, 101 Administration Building, Atlanta, GA, 30322**. can be served by executing service of process on its registered agent, Amy Adelman, at **201 Dowman Drive, 101 Administration Building, Atlanta, GA, 30322**

4.

EMI is a healthcare provider to members of the Atlanta community, the state of Georgia, and beyond. EMI is part of Emory University, made up of 11 hospitals, the Emory Clinic and more than 490 provider locations.

5.

EMI is the employer of Ms. Rizwan.

## STATEMENT OF FACTS

**A.    Briefly about Ms. Rizwan**

6.

Ms. Rizwan was born in Pakistan and moved to the United State in 2003; she graduated from with a B.A. in IT; and she acquired her RDMS degree here in Atlanta.

7.

Ms. Rizwan is of Orthodox Islamic faith and has been a practicing Muslim along with her family since birth.

8.

At all times relevant Ms. Rizwan prayed at least five times a day, and she attempted to pray at least 5 times a day, and of those five times, at least one time a day while at work, by laying down her prayer cloth. The entire prayer ritual takes on average five minutes

9.

At all times relevant, Ms. Rizwan wore a hijab around her head for religious purposes.

B.     **Ms. Rizwan began working for the Defendant**

10.

M. Rizwan began working as an Ultrasound Tech I at Emory University Hospital Clifton, in 2017; however in February 2019, Ms. Rizwan was transferred from Emory University Hospital Midtown to Emory Johns Creek Hospital, as an Ultrasound Tech II-OP, which was a shorter commute for which she was appreciative

11.

Ms. Rizwan moved back to Emory University Hospital Midtown in July 2021, as an Ultrasound Tech III-OP.

12.

From 2021 through present Ms. Rizwan has worked at the Midtown location.

C. **EMI begins discriminating and creating a hostile work environment against Ms. Rizwan from late September 2022 to present**

13.

During this time period, Ms. Rizwan's co-workers told her **.** "**[W]**e are black same skin stick together and **we are going to run you** out"; Ms. Rizwan reported this to her Human Resources department.

14.

Ms. Rizwan's Human Resources Department responded to her complaint about the statement  "**[W]**e are black same skin stick together and **we are going to run you** out" by doing absolutely nothing, while demanding Ms. Rizwan not bring up previous behaviors and comments such as these at a then upcoming meeting. Ms. Rizwan according to HR needed to "reset".

15.

Shortly thereafter, the same HR person who told Ms. Rizwan to reset and to not talk about previous behavior and comments regarding her co-workers, made fun of Ms. Rizwan's dialect in front of staff.

16.

Four days after HR demeaned Ms. Rizwan in front of staff about her speech/dialect and religious head wear, Ms. Rizwan's direct report supervisor, Tara Matlock, screamed at her with staff nearby, telling her that she, Ms. Matlock, contacted Ms. Rizwan's previous John Creek's manager about her EEOC complaint, and that everything at Emory Healthcare was just fine when Ms. Rizwan was on FMLA.

17.

Soon thereafter, one of the same co-workers who was a part of telling Ms. Rizwan that the black colleagues stuck together, called Ms. Rizwan a "bitch" and she reported that to Ms. Matlock, and once again Ms. Matlock did nothing and told Ms. Rubina to resolve the situation by herself and communicate with the colleagues.

18.

Ms. Rizwan repeatedly reported comments—made by the same African-American who told Ms. Rizwan that they stick together and would get her out, and the same African Americans who made fun of her religion constantly—to her supervisor made by co-workers such as "if you say anything about this, I will handle you" and "I hate her" and let's make her job difficult", yet, her supervisor

did nothing except tell Ms. Rizwan that "As to the comments made by the other employees, their actions are not something that you can control."

19.

During this two year period also two coworkers yell and curse at Ms. Rizwan in front of her supervisor and Ms. Rizwan asked her supervisor "are you going to do something." Ms. Matlock kept quiet. Then in the same meeting, a colleague made demeaning remarks about Ms. Rizwan's child and despite witnessing this, Ms. Matlock did noting and except write in an email later, "I am sad that the meeting turned into a negative experience…"

20.

During this same time period, Ms. Rizwan's colleagues on numerous occasions would intentionally knock on her door when she was praying to disturb her prayer; Ms. Rizwan reported this behavior and no disciplinary or investigative action was taken by her supervisor, Ms. Matlock. Or anyone else.

21.

In early 2023, an alleged investigation took place regarding Ms. Rizwan's claims; Ms. Rizwan was told that the investigation was closed out and the conclusions would be mailed to her. Ms. Rizwan has not heard about the results of this alleged investigation to this day.

22.

During this same time period on these same African-American women who have discriminated against Ms. Rizwan based on race and national origin, on numerous occasions have intentional interrupted her prayer by knocking on her while knowing she is praying.

23.

During this same time period on these same African-American women who have discriminated against Ms. Rizwan based on race and national origin, on numerous occasions have intentionally interrupted her prayer by locking the door in a manner that prohibits her entry to the room these "colleagues" know Ms. Rizwan uses for prayer.

24.

On too many occasions during this same time period, Ms. Matlock commented negatively on Ms. Rizwan's dialect.

**D. Loss of training and other opportunities**

25.

Ultrasound Tech III-OP's enhance their skill and ability to gain more pay and promotion set by training new hires, fellow residents, doctors and students which enhances skills, public relation, and social life and skills as well. Demonstrating this ability is required to increase pay and promotion.

26.

During this same time period of relentless, continual acts described above, Ms. Rizwan expressed her interest in a training job; she was denied and the opportunity was given to an extremely less qualified Level I co-worker, whereas Ms. Rizwan was a Level III at all times relevant.

27.

Again, during this same time period or relentless, continual acts described above, Ms. Rizwan expressed her interest in a training job; Ms. Rizwan was again denied, and again the opportunity was given to an extremely less qualified Level I co-worker, whereas Ms. Rizwan was a Level three at all times relevant.

1. **Denial of embryo transfers in retaliation for filing EEOC Charge and alleged investigation**

28.

As stated above, Defendant claimed to close out an investigation around February 2023, but also as noted, the promised results of that investigation or even a discussion about the investigation never occurred.

29.

Ms. Rizwan filed an EEOC charge on June 5, 2023.

30.

The ability to transfer embryos into the womb enhances a Tech's skill set immensely and provides later opportunities for increased pay and promotion.

31.

In August 2023, when Ms. Rizwan came back from paid time off, her supervisor took embryo transfers away from her, and to this day, despite repeated requests to be able to perform this vital task, her supervisor continues to deny her the opportunity.

32.

Most recently, her supervisor Ms. Matlock, told Ms. Rizwan that she cannot work with embryo transfer patients because the physicians prefer someone else, but Ms. Rizwan spoke to each relevant physician and they told her that they had no problem at all with Ms. Rizwan performing patients' embryo transfers.

33.

Ms. Matlock assigned embryo transfers to one of the African-American women who Ms. Matlock knows has demeaned Ms. Rizwan for her race and national origin, while also being part of the group Ms. Matlock know told Ms. Rizwan that she is black and will stick together to get rid of her. Said African-American woman is also a level I tech: Ms. Rizwan is a much higher Level III tech.

34.

Denying the above-described opportunities bars Ms. Rizwan from advancing to a supervisor/manager role because after working closely with a supervisor for one year, participating in training, and being part of the decision-making process, the tech will be eligible for a supervisor or manager role. Again, all these opportunities have been taken away during the same time Defendant has known about Ms. Rizwan's EEOC complaint and during this same time period where management has done absolutely nothing about Ms. Rizwan's continual complaints about continual demeaning treatment and comments regarding her race/national origin/religion.

35.

During this same time period of intentional discriminatory acts, some described above, Defendant has done everything in its power to create a hostile work environment and derail Ms. Rizwan's career, including denying her the ability to completely transfer to another hospital, so that she can leave this hostile environment.

E. **Damages**

36.

Because of the continual negative treatment related to Ms. Rizwan's race/national origin/religion she has been diagnosed with depression and high

anxiety, has developed heart issues, amongst other medical diagnosis. None of these issues existed prior to these last near two years (late September 2022 through present.)

37.

Ms. Rizwan has requested a full transfer to escape the environment but management keeps denying her request and thus each day, it's becoming more difficult for Ms. Rizwan to continue working in such a hostile environment. Ms. Rizwan's PTO and sick leave are exhausted.

## COUNT I
## DISCRIMINATION BASED ON RELIGION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

38.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 6-37, as if fully stated herein to support all allegations made in this Count.

39.

Based on the facts incorporated to support this Count, the Defendant discriminated against Ms. Rizwan based on her religion, and her religion was at least a motivating factor for said discrimination.

## COUNT II
## DISCRIMINATION BASED ON NATIONAL ORIGIN AND RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

40.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 6-37, as if fully stated herein to support all allegations made in this Count.

41.

Based on the facts incorporated to support this Count, the Defendant discriminated against Ms. Rizwan based on her national origin and race, and her national origin and race were at least a motivating factor for said discrimination.

## COUNT III
## THE CREATION OF A HOSTILE WORK ENVIRONMENT BY DISCRIMINATING BASED ON RACE, RELIGION, AND NAIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

42.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 6-37, as if fully stated herein to support all allegations made in this Count.

43.

Based on the facts incorporated to support this Count, the Defendant has created a hostile work environment in which Ms. Rizwan has had to take medical leave multiple times and has repeatedly been denied employment transfer.

## COUNT IV
## RETALIATION BASED ON OPPOSING DISCRIMINATION BASED ON RACE, RELIGION, AND NAIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

44.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 28-37, as if fully stated herein to support all allegations made in this Count, and any other paragraph this Court deems relevant.

45.

Based on the facts incorporated to support this Count, the Defendant retaliating against Ms. Rizwan for complaining about experiencing discrimination based on race/religion/national origin, race, including (but not limited to) filing an EEOC charge on June 5, 2005 and immediately thereafter after losing real opportunities to advance her career by developing mandatory skills in order to do so.

## COUNT V
## RETALIATION BASED ON OPPOSING DISCRIMINATION BASED ON RACE IN VIOLATION OF SECTION 42 U.S.C. § 1981

46.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 6-37, as if fully stated herein to support all allegations made in this Count, and any other paragraph this Court deems relevant.

47.

Based on the facts incorporated to support this Count, the Defendant retaliating against Ms. Rizwan for complaining about experiencing discrimination based on race, including (but not limited to) filing an EEOC charge on June 5, 2005 and immediately thereafter after losing real opportunities to advance her career by developing mandatory skills in order to do so.

## COUNT VI
## PUNITIVE DAMAGES

48.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 6-47, as if fully stated herein to support all allegations made in this Count.

49.

Based on the facts incorporated to support this Count, Defendant's conduct was, and still is, willful, wanton, and has demonstrated an entire want of care

which raises the presumption of a conscious indifference to consequences. Consequently, Ms. Rizwan is entitled to punitive damages and a judgment against Defendant of no less than one million ($1,000,000) dollars.

## COUNT VII
## ATTORNEY FEES AND COSTS OF LITIGATION

50.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 6-47, as if fully stated herein to support all allegations made in this Count.

51.

**Based on the facts to support this Count, Ms. Rizwan is entitled to** attorney fees, under 42 U.S.C. § 1988, inter alia.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Rizwan respectfully prays and requests a trial by jury and judgment of this Honorable Court against Defendant as follows:

(a) The process issue and service be had on Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendant, on all matters this Court deem are matter of pure law, jointly and severally, for the injuries of Plaintiff. And that all other matters be resolved by a jury;

(c) That Plaintiff recover all damages permissible by law, to include compensatory damages, punitive damages, and **special damages**, including

any back pay, future lost income, damages for her reduction in earning capacity and other expenses in an amount not less than one million dollars ($1,000,000);

(d) Plaintiff recovers all costs of litigation, including reasonable attorney fees;

(e) That a jury trial be had on all issues so triable; and

(f) That this Court enter and award such other and further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court so determines to be just and proper.

Respectfully submitted this 10th day of September 2024,

/s/ MARIO WILLIAMS
Mario Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C, Suite 103
Sandy Springs, Georgia 30342
(404) 341-4434
mwilliams@hdrattorneys.com
admin@hdrattorneys.com

*Counsel for Plaintiff*